IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIE VILLARD, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WHITEMARSH CONTINUING CARE | : | |
| RETIREMENT CMTY., | : | |
|     Defendant. | : | NO. 10-7230 |

MEMORANDUM

GENE E.K. PRATTER                                                                                   DECEMBER 14, 2012

I.     INTRODUCTION

Plaintiff Marie Villard has sued her former employer, the Whitemarsh Continuing Care Retirement Community ("Whitemarsh"), for interference and retaliation under the Family and Medical Leave Act (FMLA) and for worker's compensation retaliation under Pennsylvania law. Whitemarsh now moves for summary judgment against Ms. Villard's claims. For the following reasons, the Court grants in part and denies in part Whitemarsh's motion.

II.    FACTUAL BACKGROUND[1]

Whitemarsh hired Ms. Villard as a Certified Nursing Assistant (CNA) for its retirement community in December 2007. Ms. Villard worked nighttime shifts at Whitemarsh, and her job duties included bathing residents, laundering their clothes, monitoring their vital signs, and preparing them for medical treatment.

In April 2010, Ms. Villard injured her shoulder while moving a resident at Whitemarsh. After Ms. Villard reported her injury, Whitemarsh sent her to Concentra, a treatment facility. Concentra allowed Ms. Villard to continue working at Whitemarsh, but restricted her from lifting

---

[1] The facts discussed in this section are undisputed unless otherwise noted.

1

over ten pounds, pushing or pulling over 30 pounds of force, and reaching above her shoulders. Whitemarsh allowed Ms. Villard to comply with these restrictions by having her work in its activities department rather than in her normal CNA position. In July 2010, Concentra cleared Ms. Villard to work without restrictions, and she returned to her job as a CNA.

In September 2010, Ms. Villard met with Kristine Carcarey, the Director of Nursing at Whitemarsh, and Susan McMenamin, Whitemarsh's Director of Human Resources. Ms. Carcarey and Ms. McMenamin informed Ms. Villard that a resident who lived in Room 222 had complained about Ms. Villard's rude behavior, and they told Ms. Villard that they would have to investigate the complaint. They also asked Ms. Villard to write a statement about her interactions with the resident. In the statement, Ms. Villard denied acting rudely or disrespectfully towards the resident. However, Christina Kritzer, another Whitemarsh employee, subsequently interviewed the resident about Ms. Villard's behavior, and the resident alleged that Ms. Villard told her to not "get smart with me."

On September 23, 2010, Karen Gemmel, another Whitemarsh employee, called Ms. Villard to schedule a follow-up meeting regarding the investigation. The next day, Ms. Villard had a second meeting with Ms. Carcarey and Ms. McMenamin. On September 27, Whitemarsh terminated Ms. Villard. Whitemarsh has justified its termination by alleging that Ms. Villard acted antagonistically towards her fellow employees during her phone call with Ms. Gemmel and her second meeting with Ms. Carcarey and Ms. McMenamin.

### III. LEGAL STANDARD

Upon the motion of a party, summary judgment is appropriate if, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or

other materials," Fed. R. Civ. P. 56(c), the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Lemaire v. Hartford Life & Accident Ins. Co.*, 69 F. App'x 88, 91 n.2 (3d Cir. 2003) (quotation omitted). An issue is "genuine" if a reasonable jury could hold in the non-movant's favor with regard to that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is only "material" if its resolution could affect the result of the suit under governing law. *Id.*

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

IV. **DISCUSSION**

A. **FMLA Retaliation Claim**[2]

Retaliation claims that are based on circumstantial evidence and brought under the FMLA are analyzed according to the familiar *McDonnell Douglas* burden-shifting framework. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 n.11 (3d Cir. 2012). Accordingly, if Ms. Villard is able to establish a *prima facie* case of retaliation, the burden shifts to Whitemarsh to demonstrate a non-discriminatory reason for her termination, and Ms. Villard would then need to show that the asserted legitimate reason for her termination was a pretext for

---

[2] Ms. Villard's complaint appears to allege that Whitemarsh interfered with her FMLA rights. However, Whitemarsh's motion fails to discuss the elements of an FMLA interference claim or whether the Court should grant summary judgment on such a claim, and the Court thus declines to address the issue of FMLA interference.

discriminatory retaliation.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). To establish a *prima facie* case of retaliation, a plaintiff may show that: (1) she took qualifying leave under the FMLA; (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to her protected activity.  *See Lichtenstein*, 691 F.3d at 301-02; *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009).

      Ms. Villard argues that she engaged in protected activity under the FMLA because she took intermittent and/or reduced schedule leave from May 2010 through July 2010.  *See Sabbrese v. Lowe's Home Ctrs., Inc.*, 320 F. Supp. 2d 311, 321 (W.D. Pa. 2004) (An employee "may be entitled to take FMLA leave intermittently [] on a reduced scheduled when medically necessary.").  Ms. Villard supports this argument by noting that she periodically took leave from work to attend therapy for her injury.  In response, Whitemarsh neither disputes Ms. Villard's contention that she attended therapy through July 2010 nor disagrees with Ms. Villard's argument that working a reduced schedule to attend therapy typically qualifies as a protected activity.  Instead, Whitemarsh selectively quotes Ms. Villard's complaint and argues that she failed to allege that she suffered retaliation for working a reduced schedule.  However, paragraphs 13, 15, and 16 of the complaint allege that Ms. Villard sought medical treatment for her injury and could not return to full duty until July 2010, while paragraph 20 alleges that Ms. Villard suffered retaliation based on her needing FMLA leave.[3]  Such allegations comply with Rule 8 of the Federal Rules of Civil Procedure and sufficiently plead "enough facts to provide [Whitemarsh] with fair notice of [Ms. Villard's] claim and the grounds on which the claim rests."  *Mann v. Brenner*, 375 F. App'x 232, 236 (3d Cir. 2010) (internal quotations omitted). Therefore, Ms. Villard is not impermissibly broadening her retaliation claim, and a reasonable

---

[3] Whitemarsh fails to even acknowledge the existence of paragraphs 13, 15, and 16 in its briefing, much less explain why the allegations of these paragraphs fail to provide it with fair notice of Ms. Villard's claims.

jury could find that she engaged in protected activity under the FMLA by taking intermittent or reduced schedule leave.[4]

In order to defeat Whitemarsh's motion for summary judgment, Ms. Villard also must present sufficient evidence from which a reasonable jury could find that a causal connection existed between her FMLA leave and her September 27, 2010 termination. In certain situations, "temporal proximity between [a] protected activity and [a] termination is sufficient to establish a causal link." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). Whitemarsh terminated Ms. Villard only two-and-a-half months after she returned from her reduced schedule leave. This temporal proximity helps to create a triable issue as to the causality prong of her *prima facie* case. *See Fasold v. Justice*, 409 F.3d 178, 190 (3d Cir. 2005) (finding adverse action taken within three months of protected activity supported an inference of causation).

Additionally, Ms. Villard presents other evidence that adds additional weight to her argument that a causal connection exists between her leave and her termination. This evidence includes, but is not limited to, the following:

---

[4] Whitemarsh also argues that Ms. Villard could have worked a full 40-hour week during her therapy by taking advantage of its "flexible" scheduling policies. However, Ms. Villard testified that her therapy sessions coincided with the times that Whitemarsh scheduled her to work. *See* Docket No. 19-1 at 65. Moreover, the record is unclear as to the specific number of hours Ms. Villard was offered in the activities department during her recovery from her injury. *See* Docket No. 19-9 at 2 (email from Ms. McMenamin scheduling Ms. Villard for 18 hours a week in the activities department while noting that an unspecified number of additional hours was available to Ms. Villard). Although Whitemarsh argues in its reply brief that Ms. Villard could attend therapy *and* work 40 a week in the activities department, it does so by citing to the (second) declaration of Ms. McMenamin. *See* Docket No. 20 at 18. This declaration appears to be at odds with other sworn statements by the witness, and the Court will not rely on it to grant Whitemarsh's motion for summary judgment. *Compare* Docket No. 19-18 at 23 (Q: "In [the summer of 2010], was [Ms. Villard] getting some consistent therapy, to your knowledge? [A:] *I don't know off the top of my head whether she was going to therapy*.") (May 27, 2011 deposition testimony of Ms. McMenamin) (emphasis supplied), *with* Docket No. 20-2 at ¶ 4 ("I was aware that [Ms. Villard] had certain medical appointments or therapy sessions during the modified duty period[.]") (December 5, 2011 declaration of Ms. McMenamin).

- Prior to Ms. Villard's injury and termination, she was generally rated as meeting or exceeding expectations in her performance evaluations.

- Denise Scutt, a former Whitemarsh employee, has testified that another CNA who used vulgar language and acted disrespectfully in front of a patient was not terminated for such behavior, and that Ms. Villard's alleged behavior towards a resident typically did not result in termination.

- Whitemarsh had a progressive discipline policy during Ms. Villard's tenure, yet it terminated Ms. Villard even though she was never subject to any disciplinary action prior to September 2010.[5]

This evidence, along with the temporal proximity of Ms. Villard's leave to her termination, is sufficient to satisfy the burden of establishing a *prima facie* retaliation case. Accordingly, the burden now shifts to Whitemarsh to produce evidence of a legitimate, non-retaliatory reason for Ms. Villard's termination.

Whitemarsh's purported non-discriminatory reason for Ms. Villard's termination was that Ms. Villard behaved rudely towards a resident and her co-workers. Assuming *arguendo* that Whitemarsh has satisfied its burden on this front, the Court holds that a reasonable jury could find Whitemarsh's proffered reason for Ms. Villard's termination pretextual based on the evidence discussed above. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000) ("[E]vidence supporting [a] prima facie [retaliation] case is often helpful in the pretext stage and nothing about the McDonnell Douglas formula requires us to ration the evidence between one stage or the other."); *see also Corica v. Phila. Mental Health Care Corp.*, No. 09-5766, 2012 U.S. Dist. LEXIS 147716, at *19 (E.D. Pa. Oct. 12, 2012) (finding that "a jury could reasonably infer pretext because [the plaintiff] received [satisfactory] performance ratings . . . prior to being disciplined[.]"). Therefore, Ms. Villard has raised a triable issue of pretext, and

---

[5] Whitemarsh's reply brief skirts the issue of Ms. Villard's prior disciplinary history by failing to admit or deny whether she was disciplined before September 2010. *See* Docket No. 20-1 at ¶ 45. However, upon reviewing the record it appears that Ms. Villard's contention that she was never disciplined until September 2010 is correct.

6

the Court will deny Whitemarsh's motion for summary judgment against her FMLA retaliation claim.

**B.     Worker's Compensation Retaliation**

Whitemarsh also moves for summary judgment against Ms. Villard's claim that she was terminated in retaliation for her worker's compensation claim. The Third Circuit Court of Appeals has directed district courts to apply the Title VII framework for a retaliation claim to a worker's compensation retaliation claim brought under Pennsylvania law. *See Theriault v. Dollar Gen.*, 336 F. App'x 172, 175 (3d Cir. 2009). An employee engages in protected activity under Pennsylvania law when her injury causes the filing of a worker's compensation claim or when she suffers an injury and expresses her intent to pursue such a claim. *See Smith v. R.R. Donnelly & Sons Co.*, No. 10-1417, 2011 U.S. Dist. LEXIS 105347, at *17-18 (E.D. Pa. Sept. 16, 2011). Here, Whitemarsh admits that its worker's compensation carrier administered Ms. Villard's claim. *See* Docket No. 20-1 at ¶ 29. However, Whitemarsh argues that a reasonable jury could not find for Ms. Villard on the issues of causality or pretext.

A plaintiff may present a triable issue of causation in a worker's compensation retaliation claim by relying on "the timing of the adverse reaction via-a-vis the protected activity" or on "other circumstantial evidence concerning the employer's motivation, including. . . the employer's treatment of other employees." *See Theriault*, 336 F. App'x at 175. As discussed above, Ms. Villard was terminated a few months after receiving treatment for her shoulder injury, and she has presented evidence that Whitemarsh gave more lenient discipline to other employees who misbehaved in front of residents. A reasonable jury could find that this evidence, along with Ms. Villard's good performance reviews and the lack of disciplinary action against her prior to her injury, establishes causality and renders Whitemarsh's proffered reason

for her termination pretextual.  Therefore, the Court will deny the motion for summary judgment as to Ms. Villard's worker's compensation retaliation claim.

**C.     Back Pay**

As a general rule, "an employment discrimination plaintiff will not be allowed back pay during any periods of disability." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1101 (3d Cir. 1995) (internal quotations and alterations omitted).  The parties agree that this rule operates to preclude Ms. Villard from recovering back pay for December 1, 2010 and thereafter.  Additionally, Whitemarsh seeks to bar Ms. Villard from recovering economic damages from September 24, 2010 through the end of November 2010, by claiming that Ms. Villard testified at her worker's compensation hearing that her shoulder injury rendered her unable to work as early as September 24, 2010.  However, Ms. Villard subsequently testified at her deposition that she was able to work after her termination and never intended to testify to the contrary.  Therefore, the Court finds that an issue of fact exists with respect to whether Ms. Villard was disabled prior to December 1, 2010, and grants in part and denies in part Whitemarsh's motion on this issue so as to limit Ms. Villard from recovering back pay on December 1, 2010, and thereafter.

## V.    CONCLUSION

For the reasons discussed above, Whitemarsh's Motion for Summary Judgment is denied with respect to Ms. Villard's FMLA and worker's compensation retaliation claims, and granted in part and denied in part with respect to the issue of damages.

An appropriate order follows.

                                            BY THE COURT:

                                              /s/ Gene E.K. Pratter
                                            GENE E.K. PRATTER
                                            United States District Judge